### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:23-CR-118 |
| | ) | |
| ERIK ADDISON, | ) | |
| | ) | |
| Defendant. | ) | |

### OMNIBUS MEMORANDUM ORDER ON PRETRIAL MOTIONS

**J. Nicholas Ranjan, United States District Judge**

Before the Court are pretrial motions filed by Defendant Erik Addison.  ECF 68; ECF 69; ECF 72; ECF 73; ECF 74; ECF 75; ECF 76; ECF 77.  The Court issues this omnibus order resolving the motions.

### FACTUAL & PROCEDURAL BACKGROUND

A grand jury indicted Mr. Addison for four counts: (1) possession with intent to distribute; (2) possession of a firearm in furtherance of a drug trafficking crime; (3) possession of a machinegun; and (4) possession of a firearm and ammunition by a convicted felon.  ECF 54.  Counts One, Two, and Three arose from an incident that occurred on May 8, 2023, and Count Four arose from an incident that occurred on April 14, 2023.  *Id.*

**I.    The May 8, 2023, incident (basis for Counts One, Two, and Three).[1]**

On Monday, May 8, 2023, a multi-agency task force met about initiating an investigation into individuals who were suspected in various shootings, including Mr. Addison.  ECF 81-1, p. 16, ¶ 13.  That same day, Pittsburgh Bureau of Police detectives spotted Mr. Addison and started surveilling him with other federal agents.  *Id.* at 16-17, ¶¶ 14-15.  Shortly after 8:00 p.m., the team observed Mr. Addison pull

---

[1] The facts summarized here are contained in the affidavits in support of applications for search warrants attached to the government's omnibus brief as Exhibits 1 and 14.  ECF 81-1; ECF 81-14.

out of a parking lot in a gray Infiniti sedan.  *Id.* at 17, ¶¶ 14, 16.  Detectives initiated a traffic stop because Mr. Addison had no valid driver's license and his vehicle had a heavy window tint.  *Id.* at 18, ¶ 17.  The traffic stop escalated: Mr. Addison fled in his vehicle, and then on foot, and the chase culminated in one of the officers pinning Mr. Addison against the wall with his patrol car.  *Id.* at 18-19, ¶¶ 18-23.  As an agent was handcuffing Mr. Addison, the agent noticed a Glock pistol, wads of cash, and two Apple iPhones (one black and one white) next to Mr. Addison on the sidewalk.  *Id.* at 19, ¶ 24.  The Allegheny County Police obtained and executed a search warrant for Mr. Addison's vehicle.  *Id.* at 21, ¶ 28.  During the execution of the warrant, the officers retrieved a red Apple iPhone (which did not belong to Mr. Addison), a black Nike bag containing suspected heroin and/or fentanyl, a loaded Glock pistol magazine, and Mr. Addison's Pennsylvania Identification Card.  *Id.*

Based on these events, the government sought and received two warrants for the examination of the two iPhones found next to Mr. Addison.  *See id.* at 1-8.  The warrants authorized the search and seizure of: "incoming and outgoing call, text and other chat application message logs, contact lists, photo and video galleries, sent and received text, video and audio messages/files, online searches and sites viewed via the internet, online or electronic communications sent and received, including email, chat, and instant messages, navigation, mapping, and GPS files, telephone settings, including speed dial numbers and the telephone number for **TELEPHONES 1-3** and related identifying information such as the ESN for **TELEPHONES 1-3**, call forwarding information, messages drafted but not sent, and voice messages."  *Id.* at 3, 7.

## II.    The April 14, 2023, incident (basis for Count Four).

On April 14, 2023, a shooting occurred at Edgewood Towne Centre in Edgewood, Pennsylvania.  ECF 81-14, p. 4, ¶ 13.  At approximately 2:36 p.m., multiple shots were filed near the Dollar General in Edgewood Towne Centre.  *Id.* at

5, ¶ 17.  Multiple vehicles in the parking lot and the window of Dollar General were struck by gunfire; multiple vehicles fled while exchanging gunfire.  *Id.*  After the vehicles left Edgewood Towne Centre, a school bus driver was hit by gunfire, after which the bus driver noticed a dark-colored vehicle and a light-colored vehicle turn right on Hays Street.  *Id.* at 5-6, ¶ 18.  One of the vehicles was a gray Infiniti sedan. *Id.* at 7, ¶ 20.  In surveillance footage, a black male is seen leaning out of the Infiniti's front passenger window.  *Id.* at 9, ¶ 23.  Law enforcement recovered nine 9mm casings from streets near Hays Street and five 9mm casings from the Edgewood Towne Centre parking lot.  *Id.* at 9, ¶¶ 22, 24.

Law enforcement determined that the gray Infiniti sedan was registered to Mr. Addison based on video footage showing the license plate and that this vehicle was used in connection with both the April 14, 2023, incident and the May 8, 2023, incident.  *Id.* at 10, 13-14, ¶¶ 26-27, 37.  Through forensic testing, law enforcement also determined that the 9mm ammunition recovered from Edgewood Towne Centre and the surrounding area came from the Glock pistol recovered next to Mr. Addison on May 8, 2023.  *Id.* at 13, ¶ 36.  Evidence from the cell phones recovered from next to Mr. Addison on May 8, 2023, included a video of him with the Glock pistol inside the Infiniti, a picture of the Glock inside the Infiniti, and text messages stating that something had happened while he was driving the vehicle.  *Id.* at 14-17, ¶¶ 39-40, 42, 44.

## DISCUSSION & ANALYSIS

### I.    Motion to dismiss Count Four as "duplicitous" (ECF 68).

Count Four charges Mr. Addison with being a felon in possession of a firearm. Mr. Addison argues that this count must be dismissed as being multiplicitous of

Counts Two and Three, as the same firearm is involved in all of those counts.[2]  After careful review, the Court disagrees.

"A multiplicitous indictment charges the same offense in two or more counts and may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause." *United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992). "The basic inquiry in determining whether counts of an indictment are truly separate, and not multiplicitous, is whether proof of one offense charged requires an additional fact that proof of the other offense does not necessitate." *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978).   In determining whether an indictment is multiplicitous, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Courts look to the offenses, not the underlying facts, when applying the *Blockburger* test.  *United States v. Towers*, 98 F. App'x 169, 171 (3d Cir. 2004).

Here, Mr. Addison is charged with: (1) possession with intent to distribute fentanyl and heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) on May 8, 2023, at Count One; (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(B)(ii) on May 8, 2023, at Count Two; (3) possession of a machinegun in violation of 18 U.S.C. § 922(o)(1) on May 8, 2023, at Count Three; and (4) possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) on April 14, 2023, at Count Four. ECF 54.  Even though the same firearm is at issue in Counts Two, Three, and Four,

---

[2] Although Mr. Addison's motion title and argument refer to Count Four as "duplicitous," his argument really is that Count Four is "multiplicitous."  ECF 85, p. 2 n.1. A duplicitous indictment occurs when a single count in an indictment alleges two or more separate offenses. A multiplicitous indictment occurs when a single offense is charged in multiple counts of an indictment. As is clear from his argument, Mr. Addison is arguing the latter.

there is no multiplicity concern because the counts all require proof of at least one separate element.

Under the *Blockburger* test, the three firearm counts all require proof of different elements.  For Count Two, the government must prove that Mr. Addison: (1) committed a drug trafficking crime; (2) possessed a firearm in furtherance of that crime; and (3) the firearm was a machinegun.  ECF 55, pp. 2-3.  For Count Three, the government must prove that Mr. Addison: (1) possessed a firearm; (2) the firearm was a machinegun; (3) he possessed it knowingly; and (4) he knew that the characteristics of the firearm met the statutory definition of a machinegun.  *Id.* at 3-4.  For Count Four, the government must prove that Mr. Addison: (1) possessed a firearm; (2) was convicted of a felony at the time of the act; (3) knew that he had been convicted of a felony; and (4) possessed the firearm in or affecting interstate or foreign commerce. *Id.* at 4.

Count Four is not multiplicitous of Count Two, because Count Two requires proof of a drug trafficking crime, which Count Four does not.  *United States v. Lawrence*, 928 F.2d 36, 38-39 (2d Cir. 1991) (consecutive sentences under Section 922(g)(1) and Section 924(c) permissible); *United States v. Hunter*, 887 F.2d 1001, 1003 (9th Cir. 1989) (charges under Section 924(c)(1) and Section 922(g)(1) were not multiplicitous because they required proof of different elements); *Dempsey v. United States*, No. 07-74, 2018 WL 4567113, at *3 (D. Del. Sept. 24, 2018) (applying *Blockburger* test and finding counts under Sections 922(g)(1) and 924(c) were not multiplicitous because they required the government to prove different elements).

And Count Three is not multiplicitous of Count Four because Count Four requires two additional elements—*i.e.*, that Mr. Addison was a convicted felon and knew that fact—that Count Three does not.  *See United States v. Malachowski*, 415 F. App'x 307, 309 (2d Cir. 2011) (charges under Section 922(g)(5) and 922(o) not multiplicitous because they required proof of different elements); *United States v.*

*Moye*, 454 F.3d 390, 397 (4th Cir. 2006) (charges under Sections 922(g) and 922(j) not multiplicitous because they required proof of different elements); *United States v. Johnson*, No. 07-50127, 2008 WL 2845639, at *1 (D.S.D. July 18, 2008) (same).

Mr. Addison relies heavily on two cases, *United States v. Benjamin* and *United States v. Grant*, in his principal and reply briefs. *See* ECF 68, pp. 5-7; ECF 85, pp. 4-5. But both cases are distinguishable.

In *Benjamin*, the defendant was charged with two counts of possession of a firearm by a convicted felon in violation of Section 922(g)(1). *United States v. Benjamin*, 711 F.3d 371, 375 (3d Cir. 2013). The Third Circuit adopted the view that Section 922(g)(1) is a continuing offense and held that bringing the two charges would be impermissibly multiplicitous unless the government introduced evidence that the defendant "relinquished possession of the gun" between the two incidents. *Id.* at 378-79.

In *Grant*, the defendant was charged with one count of violating Section 922(g)(1) and one count of violation Section 922(g)(9). *United States v. Grant*, 15 F.4th 452, 455 (6th Cir. 2021). Section 922(g)(1) criminalizes being a felon in possession of a firearm, while Section 922(g)(9) criminalizes being a domestic-violence misdemeanor convict in possession of a firearm. In other words, both sections criminalize possessing a firearm based on a certain status. The Sixth Circuit recognized that "every circuit to address" whether Section 922(g) permits multiple punishments based on different subdivisions for possession of the same firearm "unanimously agrees" that it does not, and found that the counts were multiplicitous. *Id.* at 456-57.[3] The reasoning behind this is one of Congressional intent: courts have

---

[3] The Third Circuit has not addressed the issue presented in *Grant*, but has recognized that the other circuits "have unanimously found that although a defendant may be charged with violations of multiple subsections of 18 U.S.C. § 922(g), it is impermissible to impose separate sentences for each subsection of the statute based on a single incident of possession." *United States v. Zareck*, 588 F.

found that Congress did not intend to criminalize status, but instead to criminalize possession of the firearm. *United States v. Dunford*, 148 F.3d 385, 389 (4th Cir. 1998); *United States v. Shea*, 211 F.3d 658, 673 (1st Cir. 2000). As such, "the allowable unit of prosecution is the incident of possession, not the defendant's membership in a class (or classes) of persons disqualified from possession." *United States v. Parker*, 508 F.3d 434, 440 (7th Cir. 2007).

*Brown* and *Grant* are factually and legally distinct from Mr. Addison's case because Mr. Addison has not been charged with two counts under Section 922(g), nor has he been charged with two counts under different subdivisions of Section 922(g). Thus, the animating principles of those decisions are not implicated here.

Because the firearm counts in the indictment all require proof of different elements, the indictment is not multiplicitous. Even if it were, the correct remedy would not be dismissal of the counts—instead, if the indictment resulted in multiplicitous convictions, the correct remedy would be for the Court to "impose a general sentence for all of said convictions." *United States v. Blyden*, 930 F.2d 323, 328 (3d Cir. 1991).

As such, the Court **DENIES** the motion.

## II. Motion to dismiss Count Four as unconstitutional under the Second Amendment (ECF 77).

In addition to his motion to dismiss Count Four as multiplicitous, Mr. Addison also seeks to dismiss Count Four by arguing that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him and on its face. ECF 77, pp. 1-2. Mr. Addison also

---

App'x 100, 101 (3d Cir. 2014). While multiple charges under Section 922(g) may be multiplicitous, that is not the case here. *Stevenson v. United States*, No. 12-145, 2019 WL 845418, at *14 (M.D. Pa. Feb. 21, 2019), *adhered to on reconsideration*, No. 12-145, 2022 WL 676276 (M.D. Pa. Mar. 7, 2022) (stating that "*Zareck* and the decisions it relies upon" did not support the petitioner's argument that three firearms charges under Sections 922(j) and 922(g) were multiplicitous, only that the two charges under Section 922(g) were multiplicitous).

argues that Section 922(g)(1) is unconstitutionally vague and violates the commerce clause. *Id.* at pp. 2-3.

Initially, given the fluid nature of the legal landscape of this issue post-*Bruen*, some procedural background is in order. The final pretrial motions deadline in this case was May 6, 2024. ECF 67. Mr. Addison filed two pretrial motions on that date and sought and received an extension to file more pretrial motions by May 10, 2024. ECF 68; ECF 69; ECF 70. Mr. Addison filed six additional pretrial motions on May 10, 2024. ECF 72; ECF 73; ECF 74; ECF 75; ECF 76; ECF 77. The government filed its omnibus response on June 17, 2024, and Mr. Addison filed his reply on July 8, 2024. ECF 81; ECF 85. In the midst of this briefing schedule, the Supreme Court issued its decision in *United States v. Rahimi* on June 21, 2024, and vacated and remanded the Third Circuit's *en banc* decision in *Range v. Attorney General United States of America*, 69 F.4th 96 (3d Cir. 2023) (*en banc*). In *Rahimi*, the Supreme Court rejected an as-applied challenge to 18 U.S.C. § 922(g)(8). *United States v. Rahimi*, 144 S. Ct. 1889 (2024). Amidst these changes to the law surrounding Section 922(g), the Court ordered supplemental briefing from Mr. Addison and the government to address Mr. Addison's arguments regarding the dismissal of Count Four, which was completed on August 23, 2024. ECF 86; ECF 87; ECF 88.

After the Court issued its supplemental briefing order, but before that briefing was completed, the Third Circuit issued a precedential opinion in *United States v. Moore*, 111 F.4th 266 (3d Cir. 2024). In *Moore*, the Third Circuit, applying *Bruen*, rejected an as-applied challenge to Section 922(g)(1), holding that "convicts may be disarmed while serving their sentences on supervised release." *Id.* at 272.

Under *New York State Rifle & Pistol Association, Inc. v. Bruen*, "when the Second Amendment's plain text covers an individual's conduct," that conduct is presumptively protected, and to justify a statute regulating that conduct, the government must show "that the regulation is consistent with this Nation's historical

tradition of firearm regulation." 597 U.S. 1, 17 (2022). Only if the government makes this showing can a court conclude that an individual's conduct falls outside the protection of the Second Amendment. *Id.* Applying this test in *Moore*, the Third Circuit examined the historical tradition of firearm regulation and concluded that forfeiture laws disarming convicts as part of their sentences were appropriate historical analogues for disarming individuals on supervised release. *Moore*, 111 F.4th at 269-272.

*Moore* is fatal to Mr. Addison's as-applied challenge. Like Mr. Moore, Mr. Addison was on supervised release at the time the conduct underlying his Section 922(g)(1) charge occurred. ECF 87, p. 4. Under the Third Circuit's decision in *Moore*, Mr. Addison's as-applied challenge fails because "[a] convict completing his sentence on supervised release does not have a Second Amendment right to possess a firearm." *Moore*, 111 F.4th at 273.[4]

Mr. Addison's remaining constitutional challenges also fail. Because his as-applied challenge fails, Mr. Addison has not met his burden of showing that "the statute is unconstitutional in all its applications" to succeed on his facial challenge. *United States v. Terry*, Nos. 20-43, 22-178, 2023 WL 6049551, at *5 (W.D. Pa. Sept. 14, 2023) (Ranjan, J.). As for his void-for-vagueness argument, a criminal statute is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted). "Section 922(g)(1) is not vague as it clearly bars the possession of a firearm by any person who has previously been convicted of a crime punishable by more than one year in prison (or of certain misdemeanors as

---

[4] Mr. Addison notes that *Moore* is not final because the deadline for the defendant in that case to petition for *en banc* review has not yet expired. However, unless and until an *en banc* opinion is issued by the Third Circuit, *Moore* remains controlling precedent and this Court must follow it.

specifically defined)." *United States v. Ames*, No. 23-178, 2023 WL 5538073, at *3 (E.D. Pa. Aug. 28, 2023); *see also United States v. Blackshear*, No. 23-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) ("But § 922(g)(1) provides explicit notice that it bars the possession of a firearm by any person who has previously been convicted of a crime punishable by more than a year in prison (or of certain misdemeanors as specifically defined).").  Finally, Mr. Addison's Commerce Clause challenge to the constitutionality of Section 922(g) "fails on the merits, based on existing precedent."[5] *Terry*, 2023 WL 6049551, at *5.

As such, the Court **DENIES** this motion.

## III.  Motion for relief from prejudicial joinder (ECF 69).

Having denied Mr. Addison's motions to dismiss, the Court next considers his motion to sever.  Mr. Addison argues that because Counts One through Three arose out of a different situation than Count Four, he should be tried separately on Count Four because admitting certain evidence in a joint trial would be unfairly prejudicial. ECF 69, p. 2.

Mr. Addison argues that even if his possession of the firearm on May 8 is admissible regarding whether he possessed it on April 14, the full version of the May 8 incident is not admissible and would prejudice him.  ECF 69, p. 4. Mr. Addison also argues that in separate trials the Court would make rulings under Rules 401, 403, and 404(b) to eliminate prejudice that would be present in a joint trial.  ECF 85, p. 8.

An indictment "may charge a defendant in separate counts" with more than one offense "if the offenses charged . . . are of the same or similar character[.]"  Fed. R. Crim. P. 8(a).  Rule 14 allows a court to sever properly joined counts if a joint trial

---

[5] Mr. Addison explicitly acknowledges this fact.  ECF 77, p. 3 ("Finally, ***though presently foreclosed by precedent***, Mr. Addison asserts for preservation purposes that Section 922(g)(1) is also inconsistent with the original public meaning of the Constitution's Commerce Clause—as alluded to by Judge Porter's concurring opinion in *Range*." (emphasis added)).

would "prejudice a defendant or the government[.]" Fed. R. Crim. P. 14(a). For severance to be granted under Rule 14, a "defendant must pinpoint clear and substantial prejudice resulting in an unfair trial." *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010) (cleaned up), *as amended* (Oct. 21, 2010). "A district court's ruling on a motion for severance is discretionary." *United States v. Mitchell*, No. 09-105, 2013 WL 12202650, at *9 (W.D. Pa. May 6, 2013) (Cercone, J.). "In exercising its discretion, the court must balance the potential prejudice to the defendant against the advantages of joinder in terms of judicial economy." *Id.* Defendants seeking severance bear a heavy burden to show "not only that the court would abuse its discretion" in denying severance, "but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (cleaned up).

"There is a preference in the federal system for joint trials . . . for charges set forth in the same indictment." *United States v. Kubini*, 19 F. Supp. 3d 579, 629 (W.D. Pa. 2014) (Fischer, J.). In cases where "evidence of each of the joined offenses would be admissible in a separate trial for the other, concerns about cumulation of evidence and inference of a criminal disposition are largely absent." *United States v. McNeill*, No. 06-373, 2007 WL 2234516, at *3 (W.D. Pa. Aug. 2, 2007) (Diamond, J.) (cleaned up), *aff'd*, 360 F. App'x 363 (3d Cir. 2010). Additionally, "[s]everance should only be granted if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Riley*, 621 F.3d at 335 (cleaned up).

Here, Mr. Addison has not met his burden to show that denial of severance would result in substantial prejudice, for at least two reasons.

First, the government has identified evidence from each incident that would be admissible at separate trials. This includes evidence of Mr. Addison's involvement at both incidents through the presence of his vehicle and through cell phone data,

evidence that the firearm was present at both incidents from analysis of shell casings found at the scene, and evidence of Mr. Addison's drug trafficking.[6]  Because this evidence would be admissible at both trials if the Court severed Counts One through Three from Count Four, any prejudice to Mr. Addison will be minimal.  *McNeill*, 2007 WL 2234516, at *3 (holding that defendant could not demonstrate clear and substantial prejudice when evidence would be admissible in separate trials).  Additionally, judicial economy favors a joint trial because the evidence that the government would need to introduce at each trial would be somewhat duplicative.  *See United States v. Wilson*, 216 F. Supp. 3d 566, 586 (E.D. Pa. 2016) (denying motion for severance where government would need to offer duplicative testimony), *aff'd*, 960 F.3d 136 (3d Cir. 2020).

Second, Mr. Addison argues that he would be prejudiced by the jury hearing evidence regarding both incidents at a single trial.  ECF 85, p. 13.  However, this alleged prejudice can be cured with appropriate instructions by the Court.  *Riley*, 621 F.3d at 335 (affirming denial of severance because the defendant "merely assert[ed] that the jury was unable to compartmentalize the evidence.").  "In criminal trials,

---

[6] More specifically, the government has identified four categories of evidence related to the May 8 incident that would be admissible as to Count Four: (1) evidence related to the identification of the firearm as recovered on May 8 and Mr. Addison's possession of it; (2) evidence of Mr. Addison's drug trafficking activities as motive for possessing a firearm on April 14; (3) evidence from Mr. Addison's cell phones recovered during the May 8 incident that show the phone was in the area of the Edgewood Towne Centre on April 14, as evidence of Mr. Addison's involvement in that incident; and (4) evidence that Mr. Addison's vehicle was used during both the May 8 and April 14 incidents and the fact that the firearm relevant to Count Four was found in Mr. Addison's vehicle.  ECF 81, pp. 20-23.  The government has also identified four categories of evidence related to the April 14 incident that would be admissible as to Counts One through Three: (1) evidence that Mr. Addison was aware that the firearm had been converted into a machinegun; (2) evidence related to Mr. Addison's possession and regular use of a vehicle and his possession of narcotics; (3) evidence of Mr. Addison's use of the cell phone that contained evidence of drug trafficking and firearms possession; and (4) evidence that Mr. Addison was not legally able to possess a firearm, relevant to Count Two.  *Id.* at 23-27.

juries are presumed to be able to compartmentalize evidence, and any asserted prejudice to Mr. [Addison] can be cured by an appropriate jury instruction." *United States v. Webb*, No. 23-42, 2024 WL 2134864, at *4 (W.D. Pa. May 13, 2024) (Ranjan, J.); *see also United States v. Savage*, 85 F.4th 102, 119 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 1020 (2024), *and cert. denied sub nom. Merritt v. United States*, No. 23-7100, 2024 WL 1839175 (U.S. Apr. 29, 2024); *Mitchell*, 2013 WL 12202650, at *10; *Kubini*, 19 F. Supp. 3d at 629 ("It is not enough to argue that the jury is unable to compartmentalize a limiting instruction regarding evidence because juries 'are presumed to follow their instruction.'" (quoting *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993)).  There is no reason to believe that the jury will be unable to compartmentalize the evidence as to the different counts, and follow any appropriate limiting instructions.  *Zafiro*, 506 U.S. at 541.

For the foregoing reasons, the Court **DENIES** this motion.  This is without prejudice to Mr. Addison submitting proposed limiting instructions.

## IV.   **Bifurcation.**

In addition to ordering supplemental briefing on issues related to Mr. Addison's motion to dismiss Count Four as unconstitutional, the Court also ordered the parties to address whether bifurcation of Count Four would be appropriate if the Court were to deny Mr. Addison's motion to sever.  ECF 86.  After reviewing the parties' briefing, bifurcation is not appropriate in this case.

In cases involving multiple-count indictments where one of the counts is a felon in possession charge, it is appropriate to bifurcate the "felon" element from the "possession" element to avoid prejudice to the defendant.  *United States v. Jacobs*, 44 F.3d 1219, 1222-23 (3d Cir. 1995).  However, when the defendant's prior offense would be admissible at trial on other grounds, bifurcation is not appropriate.  *United States v. Stanton*, No. 11-57, 2013 WL 529930, at *4 (W.D. Pa. Feb. 11, 2013).

Here, Mr. Addison argues that bifurcation is appropriate because his prior convictions would not be admissible in a separate trial of Counts One through Three. ECF 87, p. 4.  The government argues that bifurcation is not appropriate because evidence of Mr. Addison's prior possession with intent to distribute conviction is admissible as both extrinsic evidence under Rule 404(b) and intrinsic evidence not subject to Rule 404(b).  ECF 88, p. 5.

The Court agrees with the government, for two reasons.

First, Mr. Addison's prior drug conviction is admissible as intrinsic evidence of Count Two, which charges Mr. Addison with possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), because the prior drug conviction is evidence that Mr. Addison cannot legally possess a firearm.  "[E]vidence is intrinsic if it directly proves the charged offense." *United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010) (cleaned up).  Intrinsic evidence is not subject to Rule 404(b).  *Id.* at 245.  Whether a firearm is possessed legally or illegally is one of the factors courts use to determine whether a firearm "advanced or helped forward a drug trafficking crime" under Section 924(c).  *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004), *as amended* (Aug. 3, 2004).

Second, Mr. Addison's prior conviction is admissible under Rule 404(b).  There is "a four-part test to determine whether prior-acts evidence is admissible under Rule 404(b)." *United States v. Garner*, 961 F.3d 264, 273 (3d Cir. 2020).  "Such evidence is admissible if it is: (1) offered for a non-propensity purpose; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 so its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested."  *Id.* (cleaned up).  Evidence of a prior drug trafficking crime is admissible if it satisfies the first three prongs of the test and the Court gives an appropriate limiting instruction.  *United States v. Lee*, 573 F.3d 155, 166 (3d Cir. 2009).  "Knowledge, intent, and lack of mistake or accident are well-

established non-propensity purposes for admitting evidence of prior crimes or acts." *United States v. Givan*, 320 F.3d 452, 461 (3d Cir. 2003).

Here, the government intends to introduce Mr. Addison's prior conviction as evidence of Mr. Addison's knowledge of narcotics and lack of accident or mistake related to the fentanyl found in his vehicle for the May 8, 2023, incident.  ECF 88, p. 9.  The first part of the test is satisfied because the government plans to introduce the evidence for the non-propensity purpose of showing knowledge and intent.  *United States v. Jackson*, 619 F. App'x 189, 193 (3d Cir. 2015).  The second part of the test is satisfied because the evidence is relevant to establishing the elements of Mr. Addison's drug charge.  *Id.* (upholding introduction of evidence of "past distribution as relevant to prove knowledge of the same or different drug in a later distribution trial.").  As to unfair prejudice under Rule 403, the Court finds that the probative value is not substantially outweighed by the unfair prejudice because if the "evidence is highly probative, even a large risk of unfair prejudice may be tolerable."  *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002); *see also United States v. Landfried*, No. 19-8, 2021 WL 5417515, at *2 (W.D. Pa. Nov. 19, 2021) (Ranjan, J.) (finding that prejudice did not substantially outweigh probative value of prior conviction because defendant's "knowledge and intent" were "crucial elements to the charges against him").

As such, the Court will not bifurcate Count Four.  This is without prejudice to Mr. Addison submitting proposed limiting instructions.

## V.   Motion for evidentiary hearing regarding law enforcement conduct (ECF 72).

Mr. Addison requests an evidentiary hearing regarding law enforcement's conduct during a May 8, 2023, traffic stop to "determine whether law enforcement acted legally or illegally" and if it did, requests the Court to "instruct the jury about that fact and how to consider that fact when evaluating credibility."  ECF 72, p. 2.

Mr. Addison is not requesting suppression of any evidence connected with law enforcement's conduct, which is the typical remedy for a Fourth Amendment violation. *Id.* at 5. The government argues that such a hearing would result in an impermissible advisory opinion that, if issued, would be inadmissible character evidence and impermissible hearsay. ECF 81, p. 28. For the following reasons, the Court will deny Mr. Addison's motion.

"Federal courts may not decide questions that cannot affect the rights of litigants in the case before them[.]" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (cleaned up). Opinions that do not affect the rights of the parties in the case are impermissible advisory opinions. *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013). Advisory opinions are "greatly disfavored[.]" *United States v. Badaracco*, 954 F.2d 928, 943 (3d Cir. 1992). This is so because "the duty of the court is to decide actual controversies by a judgment which can be carried into effect, and not . . . to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Burkey v. Marberry*, 556 F.3d 142, 149 (3d Cir. 2009).

As an initial matter, Mr. Addison has not identified what law enforcement actions were allegedly illegal. Mr. Addison "disputes law enforcement's version of events regarding the alleged tint violation and what it did and did not know regarding his licensure status at the time of the stop." ECF 72, p. 4. However, Mr. Addison does not identify any specific actions taken by law enforcement that violate the Fourth Amendment. Instead, Mr. Addison makes a vague reference to what law enforcement "did and did not know regarding his licensing status at the time of the stop[.]" *Id.* at 1, 3. Mr. Addison states that "regardless of law enforcement's motivations the [May 8, 2023] encounter to [the point where Mr. Addison was stopped by local law enforcement] was, legally, a simple traffic stop." *Id.* at 3.

As Mr. Addison acknowledges, the typical relief for a violation of the Fourth Amendment is suppression. *Id.* 5. Mr. Addison also acknowledges that suppression

based on law enforcement's alleged illegal behavior may not be appropriate because of "the apparent attenuation between the alleged illegality and the evidence." *Id.* (citing *Utah v. Strieff*, 579 U.S. 232, 242 (2016)).[7]  In lieu of suppression, Mr. Addison asks the Court to hold an evidentiary hearing, and, if the Court determines that law enforcement acted illegally, "instruct the jury about that fact and how to consider that fact when evaluating credibility." *Id.*

Although not framed as such, the relief Mr. Addison seeks is an advisory opinion to the jury that law enforcement acted illegally and that the jury should take this fact into consideration during their deliberations. *Id.*  In this circuit, courts have refused to issue advisory opinions in various analogous scenarios. *See, e.g., United States v. Davis*, No. 14-271, 2016 WL 3406056, at *2 (W.D. Pa. June 21, 2016) (McVerry, J.) (refusing to issue advisory opinion on whether witness was necessary witness before trial); *United States v. Hammer*, No. 96-239, 2011 WL 6019197, at *2 (M.D. Pa. Dec. 1, 2011) (refusing to issue advisory opinion on whether Confrontation Clause would apply at death penalty hearing in part because defendant didn't identify particular testimony that government would present that would violate the Confrontation Clause).

Here, Mr. Addison's request for an evidentiary hearing would result in an advisory opinion because the relief that he seeks would not affect his rights in the case. *In re Lazy Days' RV Ctr., Inc.*, 724 F.3d at 421.  If Mr. Addison had brought a successful suppression motion based on law enforcement's alleged illegal conduct, the Court's suppression of illegally obtained evidence would safeguard Mr. Addison's constitutional rights.  Instructing the jury that law enforcement acted illegally would

---

[7] In *Strieff*, the Supreme Court held that suppression was not warranted where evidence seized during an unlawful stop "in connection with a bona fide investigation of a suspected drug house . . . because the unlawful stop was sufficiently attenuated by [a] pre-existing arrest warrant."  579 U.S. at 242.

not have the same effect and risks confusing the jury and the Court usurping the jury's role as ultimate factfinder and judge of credibility.

Because the relief that Mr. Addison seeks would result in an impermissible advisory opinion, the Court **DENIES** this motion. The Court will include its typical jury instruction regarding evaluation of the credibility of witnesses who are law enforcement officers.

## VI.   Motion to suppress (ECF 73).

Mr. Addison seeks suppression of evidence gained from forensic analysis of his cell phones pursuant to two warrants. ECF 73, p. 2. Mr. Addison argues that the warrants were overly broad because they sought information going back months and years. *Id.* at 3. In particular, Mr. Addison takes issue with statements in the affidavit supporting the warrants stating that "[e]lectronic files . . . can be stored for years[,]" electronic files "can be recovered months or years later using forensic tools[,]" and deleted files may still be available "for long periods of time before they are overwritten." *Id.* at 3; *see* ECF 81-1, pp. 24-25, ¶¶ 38-40. After careful consideration, the Court will deny the motion.

The government sought two warrants for the examination of Mr. Addison's two iPhones. *See id.* The warrants authorized the search and seizure of: "incoming and outgoing call, text and other chat application message logs, contact lists, photo and video galleries, sent and received text, video and audio messages/files, online searches and sites viewed via the internet, online or electronic communications sent and received, including email, chat, and instant messages, navigation, mapping, and GPS files, telephone settings, including speed dial numbers and the telephone number for **TELEPHONES 1-3** and related identifying information such as the ESN for **TELEPHONES 1-3**, call forwarding information, messages drafted but not sent, and voice messages." *Id.* at 3, 7. Mr. Addison argues that the warrants were "grossly

overbroad" because they sought "permission to obtain evidence going back years without limitation." ECF 73, p. 2. The Court disagrees.

The Fourth Amendment prohibits general warrants. *United States v. Perez*, 712 F. App'x 136, 138 (3d Cir. 2017). "An overly broad warrant describes in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause." *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 149 (3d Cir. 2002) (cleaned up). To guard against the issuance of overly broad and general warrants, the Third Circuit has articulated a test for particularity. *Perez*, 712 F. App'x at 138-39. "Particularity has three components: First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the warrant must specify the items to be seized by their relation to designated crimes." *Id.* (cleaned up).

"[C]ourts generally recognize that search warrants may authorize broad searches of electronic data on cellphones and computers, without violating the particularity requirement." *United States v. Reese*, No. 19-257, 2021 WL 4429429, at *4 (W.D. Pa. Sept. 27, 2021) (Ranjan, J.). Broad searches of cell phones and computers are permissible "because criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity, [and] a broad, expansive search of the hard drive may be required." *United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011). The nature of a cell phone "necessarily provides a potential criminal actor with a nearly limitless variety of means and methods to further their criminal activity, to broadcast their success in criminal activity, and to conceal evidence of their criminal activity[.]" *United States v. Carter*, No. 20-104, 2024 WL 510344, at *9 (W.D. Pa. Feb. 9, 2024) (Horan, J.). Because of this broad potential for cell phone to hold evidence, "a warrant for the search of a cell phones is sufficiently particularized

so long as it specifies "the item to be searched and the crime for which police [are] seeking evidence." *United States v. Bridges*, No. 21-1679, 2022 WL 4244276, at \*4 (3d Cir. Sept. 15, 2022), *cert. denied sub nom. Jones v. United States*, 143 S. Ct. 804 (2023), and *cert. denied*, 143 S. Ct. 805 (2023).

Here, the warrants were not overbroad. Contrary to Mr. Addison's argument, "the lack of a limitation in the search warrant for the locations in the cell phones to be searched or the date range within which law enforcement could search for evidence" does not invalidate the warrants. *United States v. Jackson*, No. 23-26, 2024 WL 150224, at \*31 (E.D. Pa. Jan. 12, 2024). The warrants satisfy the particularity requirement for three reasons. First, the warrants identify specific offenses: violations of 18 U.S.C. § 922(g)(1), 21 U.S.C. § 841(a), 18 U.S.C. § 924(c), and 18 U.S.C. § 922(o). ECF 81-1, pp. 3, 7. Second, the warrant describes the location to be searched, Mr. Addison's cell phones. *Id.* at 1, 4. Third, the warrants identify the items to be seized and their relation to the alleged crimes. *Id.* at 23-24, ¶¶ 33-36. Because the warrants do not lack particularity, the Court **DENIES** the motion.

## VII.  Motion for discovery (ECF 74).

Mr. Addison represents in his reply that he "considers his discovery requests resolved" and requests that the Court set an appropriate expert disclosure schedule in its pretrial order. ECF 85, p. 16. As such, the Court **DENIES** this motion as moot and will set an appropriate expert disclosure schedule in its pretrial order.

## VIII.  Motion to preserve rough notes (ECF 75).

Mr. Addison requests that the Court order the government to preserve "all rough notes, drafts of reports, contemporaneous or other notes of witness interviews, notes relative to surveillance or any other any other law enforcement activities, including texts, e-mails or other forms of electronic communication by, among or including law enforcement personnel or civilian witnesses." ECF 75, p. 2-3. The government has no objection to an order that reaffirms its obligation to preserve its

agents' rough notes created during the investigation.  ECF 81, p. 43.  However, the government points out that local law enforcement officers are not required to preserve their rough notes and requests that any order be limited to federal agents involved in the investigation.  *Id.* at 43-44.  Accordingly, the Court **GRANTS** Mr. Addison's motion and **ORDERS** that the government preserve the rough notes of the federal agents involved in the investigation.

## IX.    Motion for early notice of Rule 404(b) evidence (ECF 76).

Mr. Addison requests an order requiring the government to produce any Rule 404(b) evidence 45 days before trial.  ECF 76, p. 2.  The government through its omnibus response provides notice of its intent to seek admission of certain evidence pursuant to Rule 404(b).  ECF 81, pp. 44-45.  To the extent additional Rule 404(b) evidence comes to light, the government proposes disclosure three weeks before trial.  *Id.* at 45.  Disclosure of these materials two weeks before trial generally amounts to reasonable notice of the government's intent to use this kind of evidence.  *United States v. Craig*, No. 21-338, 2024 WL 449386, at *5 (W.D. Pa. Feb. 6, 2024) (Conti, J.); *United States v. Brown*, No. 21-13, 2023 WL 1067540, at *5 (W.D. Pa. Jan. 27, 2023) (Horan, J.).  Based on the government's willingness to provide notice three weeks prior to trial, the Court **GRANTS** the motion.  The Court will order the government to produce these materials three weeks before trial in its pretrial order.

*********************

DATE:  September 24, 2024                          BY THE COURT:

                                                  /s/ *J. Nicholas Ranjan*
                                                  United States District Judge