# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) 2:23-CR-118 |
| | ) |
| ERIK ADDISON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER ON MOTIONS IN LIMINE

**J. Nicholas Ranjan, United States District Judge**

Before the Court is the government's trial brief (ECF 112) and Mr. Addison's response. ECF 124. Together, these documents serve mainly as the parties' evidentiary motions *in limine*. The Court resolves the parties' disputes as follows.

### I. Mr. Addison's alleged flight from the traffic stop.

The government intends to introduce evidence that on May 8, 2023, Mr. Addison fled from law enforcement during a traffic stop, "including ramming multiple law enforcement vehicles, nearly hitting a detective on foot, and crashing into at least one civilian's vehicle[.]" ECF 112, p. 20. The government argues that evidence of Mr. Addison's flight from law enforcement is admissible as intrinsic evidence as to Counts One, Two, and Three, and admissible for the non-propensity purpose of consciousness of guilt as to Count Four. *Id.* Mr. Addison argues that while evidence of his alleged flight may be admissible to show consciousness of guilt as to Counts One, Two, and Three, it is not admissible as evidence of consciousness of guilt as to Count Four because the alleged flight occurred 24 days after the events forming the basis for Count Four. ECF 124, p. 7.

Intrinsic evidence is not subject to Rule 404(b). *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). "Intrinsic evidence is evidence that directly proves the charged offense, or that constitutes uncharged acts performed contemporaneously

with the charged crime if they facilitate the commission of the charged crime." *United States v. Savage*, 85 F.4th 102, 128-29 (3d Cir. 2023) (cleaned up), *cert. denied*, 144 S. Ct. 1020 (2024), *and cert. denied sub nom. Merritt v. United States*, 144 S. Ct. 1468 (2024); *Green*, 617 F.3d 233, 248-49 (3d Cir. 2010). Evidence of flight that occurs contemporaneously with a charged crime is intrinsic evidence because it prolongs the charged crime. *See United States v. Carothers*, No. 20-31, 2024 WL 4581643, at \*6 (W.D. Pa. Oct. 25, 2024) (Gibson, J.) (holding that defendant's flight was intrinsic evidence because his flight prolonged defendant's possession of firearms). However, extrinsic "[e]vidence of a defendant's flight is admissible to prove consciousness of guilt." *United States v. Thomas*, 322 F. App'x 177, 183 (3d Cir. 2009). And consciousness of guilt is a permitted non-propensity purpose under Rule 404(b). *United States v. Arrington*, 530 F. App'x 143, 146 (3d Cir. 2013).

Evidence of Mr. Addison's alleged flight is intrinsic evidence as to Counts One, Two and Three. Count One charges Mr. Addison with possession with intent to distribute, Count Two charges Mr. Addison with possession of a firearm in furtherance of a drug trafficking crime, and Count Three charges Mr. Addison with unlawful possession of a machine gun. ECF 54. These counts all concern Mr. Addison's unlawful possession of drugs and guns on May 8, 2023, immediately prior to and during his flight with law enforcement. Because the flight here facilitated the crimes charged in Counts One through Three by prolonging Mr. Addison's possession of drugs and a firearm, evidence of the flight is intrinsic as to those counts. *United States v. Webb*, No. 23-42, 2024 WL 4881971, at \*1 (W.D. Pa. Nov. 25, 2024) (Ranjan, J.) (holding that "evidence of [the defendant's] flight [was] intrinsic evidence as to Count Four because his flight prolonged his possession of the controlled substances."); *Carothers*, 2024 WL 4581643, at \*6 (stating that "the flight facilitated the charged crimes by prolonging [the defendant's] possession of the firearms").

Because the flight did not occur contemporaneously with the crime charged in

Count Four, the Court must analyze the evidence of the alleged flight as to Count Four under Rule 404(b). "Admissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). On balance, the Court finds Mr. Addison's alleged flight is admissible as evidence of consciousness of guilt of Count Four, for the following reasons.

First, the alleged flight is being proffered for consciousness of guilt as to Count Four, which is a non-propensity purpose. ECF 112, p. 21; *Arrington*, 530 F. App'x at 146. Second, evidence of Mr. Addison's alleged flight is relevant to consciousness of guilt. Third, the probative value is not substantially outweighed by the danger of unfair prejudice. As to Count Four, the government has proffered evidence that in the days following April 14, Mr. Addison was researching the events of April 14 on his cell phone and warned his mother about using his car that was also involved in those events. ECF 112, pp. 23-24. This Court has previously found that a gap of four days between the charged conduct and the flight did not mean that the probative value of the evidence of the flight was substantially outweighed by the danger of unfair prejudice. *See Webb*, 2024 WL 4881971, at *2.

While Mr. Addison's alleged flight occurred 24 days after the date of the conduct underlying the charge in Count Four, Mr. Addison's searches related to the incident and his warning to his mother about driving his car provide a continuing durational link of concern about being arrested in relation to the April 14th incident. In other words, the flight was part of a continuing pattern regarding Mr. Addison's concern over being apprehended, and isn't so remote in time as to render this evidence

irrelevant or unduly prejudicial. Fourth, the Court will include Third Circuit Model Jury Instruction 4.30, which will instruct the jury that while they may consider the evidence of flight as reflecting consciousness of guilt, they may also attribute the flight to some other reason.

Mr. Addison's objection to this evidence is **OVERRULED.**

## II. Mr. Addison's alleged continued flight on foot and shooting at police.

The government intends to introduce evidence that as part of the May 8th flight from police, Mr. Addison shot at police while he was fleeing on foot and after he abandoned his vehicle. ECF 112, p. 24. The government argues that evidence that Mr. Addison shot at police while he was fleeing from them on foot is intrinsic to the charged conduct, and if the Court finds it is not, is alternatively admissible under Rule 404(b). *Id.* Mr. Addison argues that this evidence is not intrinsic and is also inadmissible under Rules 401, 402, 403, and 404(b) because it is "other acts" evidence that creates a significant risk of unfair prejudice. ECF 124, pp. 8-11.

First, evidence of Mr. Addison's continued flight on foot is admissible for the same reasons as stated above in Section I.

Second, evidence of Mr. Addison shooting at police is admissible because it is direct evidence that Mr. Addison knowingly possessed the firearm, and knew that that firearm had a Glock switch on it (*i.e.*, knowledge that it was equipped to be machine gun). *United States v. Perez-Greaux*, 83 F.4th 1, 27 (1st Cir. 2023) (finding evidence that the defendant handled a firearm would tend to establish that the defendant knew that it had been altered to fire automatically). This evidence has extraordinarily high probative value, as it shows Mr. Addison holding and firing the firearm at issue. On the other side of the equation, there is certainly some prejudice; firing shots at the police is prejudicial. But this prejudice does not substantially outweigh the high probative value of the evidence. Further, once the evidence comes in, the Court is open to limiting instructions to minimize undue prejudice and avoid

juror confusion.[1]

Mr. Addison's objection to this evidence is **OVERRULED**.

## III. Rap videos from Mr. Addison's social media.

The government intends to introduce excerpts of three rap videos from Mr. Addison's social media accounts (Exhibits G-358, G-369, and G-410). ECF 112, p. 26. The government argues that these exhibits are intrinsic evidence because they directly prove the charged offenses through Mr. Addison's descriptions in the video of "his involvement in drug trafficking, his possession of firearms in connection with his drug trafficking, and his knowing possession of Glock Conversion Devices, also known as Glock switches." *Id.* In the alternative, the government argues that the videos are admissible as extrinsic evidence under Rule 404(b). *Id.* Mr. Addison argues that the rap videos are not intrinsic and inadmissible under Rules 403 and 404(b).

The first video (G-358), "No Witness" was uploaded to Facebook on March 26, 2023. ECF 112, p. 27. It contains the following lyrics:

> Addison: Bitch, I really blitz in traffic. Scorching out my whip. Glick under the pit won't catch me clutching on my hip.
> Background: [Not at all].
> Addison: Niggas will try to dip. Got B on point with that blick
> Background: [be on point.]
> Addison: I mean BOP. But no federal counting list,
> Background: [no stand up count]
> Addison: thousand eight grams compress it to 800 bricks. It's tension in this bitch. We make niggas emotion switch. I keep tapping that switch, I walk 'em down tapping that blip.

*Id.* The government also proffers that someone is imitating a machinegun at the end of the video. *Id.* at 27, n.6.

---

[1] The limiting instruction probably should extend not only to Mr. Addison firing shots at the police, but the police subsequently ramming Mr. Addison into the wall. The video of the ramming is relevant, because it shows Mr. Addison with the gun at issue by his side, as police seized him. But the jury should not be confused as to whether this case concerns the use of excessive force.

The second two videos (G-369 and G-410), "No Mystery," were uploaded to Facebook and Instagram on May 4, 2023. *Id.* They contain the following lyrics:

> Busting moves with tools. I brung the switchy out. No mystery, playing with the members, you'll be history. Don't mention me. Tweak this Ride with switchy just for tempting me. I'm tweaking out. Pistol raised as high as I be leaving out my momma house busting moves with tools. I brung the switchy out. Man, traffic fully automatic.

*Id.*

"Courts should be wary of overly permissive rules allowing the use of rap lyrics and videos against criminal defendants at trial." *United States v. Jordan*, 714 F. Supp. 3d 158, 167 (E.D.N.Y. 2024). "The general conclusion from courts that have considered this type of evidence is that explicit rap videos are probative and outweigh substantial prejudice when the defendant performs the song, describes events closely related to the crime charged, and the evidence is not cumulative." *United States v. Sims*, 11 F.4th 315, 323 (5th Cir. 2021). "Rap lyrics are more likely to be found probative and admitted at trial when they mirror the charged crime(s) or describe activity that resembles aspects of the central crime(s) alleged." *United States v. Williams*, 663 F. Supp. 3d 1085, 1134 (D. Ariz. 2023). However, there must be more than "merely a tenuous connection to the defendant or issues in the case." *United States v. Herron*, No. 10-615, 2014 WL 1871909, at *4 (E.D.N.Y. May 8, 2014), *aff'd*, 762 F. App'x 25 (2d Cir. 2019).

Against this backdrop, the Court finds that the "no witness" video is admissible, but the other two videos are not.

***"No witness" video.*** The government contends that this video is relevant intrinsic evidence to Count One because it includes lyrics discussing breaking down fentanyl into packages ("bricks") for distribution. ECF 112, p. 29. The government also argues that it is intrinsic evidence of Counts Two and Three because the government must prove that Mr. Addison possessed a firearm that functioned as a

machinegun in furtherance of drug trafficking and that he was aware that the firearm could function as a machinegun, and Mr. Addison "describes 'tapping that switch.'" *Id.* at 30. The government also argues that this video is intrinsic to Count Four because it shows that Mr. Addison possessed a Glock pistol prior to the Edgewood shooting which matched the firearm used in that shooting. *Id.* at 31. Finally, the government argues that this video is extrinsic evidence of Mr. Addison's knowledge of the drugs in his vehicle, intent to distribute those drugs, knowledge that the firearm was a machinegun, and his opportunity to possess a firearm on April 14. *Id.* at 34-36.

The Court finds this video as admissible intrinsic or extrinsic evidence, and further finds that the video passes muster under the balancing tests of Rule 403 and Rule 404(b).

Beginning with the probative value of the rap video, the Court finds it to be high for the following reasons:

- Importantly, there is sufficient evidence here that Mr. Addison authored the lyrics to the rap song, and that it is autobiographical. The authorship can be established by the fact that the lyrics to the song were in the Notes section in his phone, and Mr. Addison uploaded the video to social media. Additionally, if the Court is reading the exhibit correctly, Mr. Addison further made a comment on social media suggesting authorship (*i.e.*, "follow my IG rap shit taken off" (G-357)). Additionally, Mr. Addison himself is seen as the lead in the video and shown to be the main rapper in the video. This establishes a strong connection between Mr. Addison and the words spoken. *Compare United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011) (pointing to lack of evidence of authorship as part of reason for exclusion); *United States v. Sneed*, No. 14-159, 2016 WL 4191683, at *6 & n.4 (M.D. Tenn.

Aug. 9, 2016) (excluding rap video in part because there was "no evidence to suggest that the rap video in question is autobiographical" because the video "only generally describe[d] drug dealing").

- The government argues that Mr. Addison's references to the Glock switch in the rap video are critical to proving that he knew that the gun at issue was a machinegun. The Court agrees. The Court finds that, while certainly not dispositive, Mr. Addison's references to the Glock switch tend to show that he would know what that device is, and thus go to his knowledge of it being a machinegun.

- The same is true of the other references in the video—*i.e.*, a reference to "thousand eight grams compress it to 800 bricks" tends to show Mr. Addison's knowledge of how to traffic drugs.

On the other side of the equation is the prejudice, which the Court does not find to be substantial:

- To begin with, only a portion of the rap video will be shown, which minimizes the prejudice.

- The Court has concerns over the performative nature of the rap video generally. Because this video will be introduced narrowly for purposes of Mr. Addison's knowledge, the Court will exclude cumulative other evidence from it, such as still shots from the video of Mr. Addison and others holding guns and cash.[2] This will minimize any prejudice of admitting something that is performative in nature.

- One lyric in the video does give the Court pause—that is the reference to "BOP but no federal counting list," which would suggest to the jury

---

[2] This is not to suggest that the other videos and photos of Mr. Addison holding drugs and cash are inadmissible. Those videos and photos have a much higher probative value because they are photos being sent or posted, and nothing about them suggests that they might be performative like a rap video.

>that Mr. Addison had a prior federal conviction and served time in the BOP. While this is relevant to Count Four (the felon-in-possession charge), the Court understands that the parties stipulated as to the predicate prior conviction, which is a prior state-court charge. As such, the Court orders the government to redact or cut the audio to remove the "BOP but no federal counting list" lyric.
>
>- Finally, the Court is open to a limiting instruction to caution the jury as to how to treat a rap video.

On balance, and with the above safeguards in place, the Court finds this video inadmissible under Rules 403 (as well as under Rule 404(b), to the extent it is considered extrinsic) because the probative value is substantially outweighed by the danger of unfair prejudice.

***Second and third videos ("No mystery")***.  The government argues that these videos are intrinsic evidence for similar reasons as the first video, and also argues that these videos are admissible under Rule 404(b) to show Mr. Addison's knowledge that the firearm was a machinegun and his intent in possessing a machinegun in furtherance of a drug trafficking crime. ECF 112, pp. 29-30, 35-36. Unlike the first video, the Court finds these "no mystery" videos are inadmissible under Rule 403 and Rule 404(b), for the two following main reasons.

First, there does not appear to be sufficient authorship evidence for these videos, linking Mr. Addison as the author. This significantly lessens any probative value as to knowledge of the lyrics.

Second, Mr. Addison is not even "performing" in these videos; he is simply seen dancing along as the music plays in the background, and, at times, mouthing words. This makes the video far too tenuous to impute knowledge to Mr. Addison. *United States v. Campbell*, No. 22-159, 2023 WL 5598976, at *1 (S.D. Miss. Aug. 29, 2023) (excluding rap video that depicted the defendant in the background and was not

performed by him); *Sneed*, 2016 WL 4191683, at *6 & n.4.

On balance, the Court finds these two videos inadmissible under both Rules 403 and 404(b) because the probative value is substantially outweighed by the danger of unfair prejudice.

Mr. Addison's objection is therefore **OVERRULED** as to the "no witness" video, but **SUSTAINED** as to the "no mystery" videos.

IV.   **Mr. Addison's alleged possession of large amounts of cash.**

The government intends to introduce photographs and videos showing Mr. Addison possession large amounts of cash, from a variety of sources including his cell phone, Facebook account, and Instagram account. ECF 112, p. 37. The government argues that evidence of Mr. Addison's possession of large amounts of cash is admissible as intrinsic evidence as to Counts One and Two as evidence of his involvement in drug trafficking, and if not, the evidence is admissible as extrinsic evidence to establish Mr. Addison's knowledge, absence of mistake, and intent. *Id.* at 37-38. The government also intends to introduce evidence from the Pennsylvania Department of Labor and Industry showing that Mr. Addison has not reported any legitimate source of income for the last several years. *Id.* at 38-39. Mr. Addison argues that images from his cell phone and social media accounts depicting him in possession of large amounts of cash are inadmissible under Rules 401, 403, and 404(b) because it is not intrinsic to the crimes charged and its probative value is substantially outweighed by the danger of unfair prejudice. ECF 124, pp. 13-15. Mr. Addison also argues that evidence from the Pennsylvania Department of Labor and Industry showing that he has not reported any lawful income for the last several years is inadmissible under Rules 401, 403, and 404(b). *Id.* at pp. 13-15.

Both evidence of possession of large amounts of cash and evidence that Mr. Addison did not report any income are circumstantial intrinsic evidence of drug trafficking not subject to a Rule 404(b) analysis. *United States v. Mitchell*, No. 09-

105, 2013 WL 12202656, at *6 (W.D. Pa. Sept. 27, 2013) (Cercone, J.).

***Photographs of Mr. Addison with cash.*** "[P]ossession of large amounts of cash with evidence of narcotics trafficking is generally relevant and admissible." *United States v. Cooley*, 131 F. App'x 881, 883 (3d Cir. 2005). And this type of evidence is routinely admitted. *United States v. Chandler*, 326 F.3d 210, 215 (3d Cir. 2003) ("In a narcotics prosecution, it is well established that the government may introduce evidence of cash purchases coupled with tax evidence tending to show that a defendant had no legitimate source of cash." (quotation omitted)). Here, the images showing Mr. Addison with large amounts of cash are relevant to his drug trafficking. *See United States v. Whyte*, 795 F. App'x 353, 361-62 (6th Cir. 2019); *United States v. Johnson*, 469 F. Supp. 3d 193, 210 (S.D.N.Y. 2019); *United States v. Macklin*, 104 F.3d 1046, 1049 (8th Cir. 1997). And the Court finds no undue prejudice here with respect to these images.

***Income records.*** As to the Pennsylvania Department of Labor and Industry records, "[i]t is well-established in drug trafficking prosecutions that evidence of a defendant's non-filing of tax returns is admissible as circumstantial evidence tending to show that the defendant possessed a large amount of cash without a legitimate source." *Mitchell*, 2013 WL 12202656, at *6 . This evidence is "far more probative than prejudicial" under Rule 403 because the government is seeking to show that the large amounts of cash in Mr. Addison's possession "were illegal proceeds from drug trafficking." *Id.* (denying motion *in limine* to exclude evidence of defendant's non-filing of tax returns); *see also United States v. Quinones-Davila*, No. 16-9, 2017 WL 2271621, at *8 (D.V.I. May 22, 2017) (stating that "unexplained possession of large amounts of cash is highly probative circumstantial evidence of illegal activity."); *United States v. Napoli*, No. 11-6353, 2012 WL 4459584, at *20 (E.D. Pa. Sept. 26, 2012) (holding that "the probative value of evidence that [the defendant] did not file tax returns exceeded any unfair prejudice").

With respect to the balancing of this relevant evidence under Rule 403, the Court can discern no prejudice, let alone undue prejudice, that might outweigh the clear probative value of the evidence.

Mr. Addison's objection to this evidence is **OVERRULED**.

## V.     Images of Mr. Addison with a black bag.

The drugs forming the basis for Count One were found in a black bag during the May 8 incident—the government intends to introduce evidence that Mr. Addison possessed the same black bag on numerous occasions before May 8 through photographs with Mr. Addison and the bag. ECF 112, pp. 39-40. The government argues that this evidence is intrinsic to Counts One through Three. *Id.* Mr. Addison does not object to any image containing him and the black bag. ECF 124, p. 15. However, Mr. Addison does object to any image that contains him, the black bag, and drugs or firearms because images with the addition of drugs or firearms should be excluded under Rules 401, 402, 403, and 404(b). *Id.* at pp. 15-16.

There are three categories of images here: (1) images of Mr. Addison and the black bag; (2) images of Mr. Addison, the black bag, and cash; and (3) images of Mr. Addison, the black bag, cash, and drugs and/or firearms.

As to the first category, Mr. Addison "agrees that evidence regarding his possession of a black bag" is relevant and admissible. *Id.* at p. 15.

As to the second category, images including the black bag and large amounts of cash are admissible for the same reason the Court articulated with regard to other images showing Mr. Addison with large amounts of cash in Section IV.

As to the third category, images including the black bag and drugs and/or firearms are admissible as intrinsic evidence because they relate directly to Mr. Addison's possession of drugs and the firearm in question because "in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his

knowledge and intent with regard to the crime charged." *United States v. Cassell*, 292 F.3d 788, 793 (D.C. Cir. 2002) (cleaned up) (upholding district court's admission of prior firearm possession); *United States v. Williams*, No. 07-5, 2008 WL 4921225, at *2 (W.D. Pa. Nov. 14, 2008) (Gibson, J.) (finding photographs of defendant holding firearms admissible to show knowledge). Possession of fentanyl in connection with the black bag is highly probative as to Count One. Additionally, at least one of the images shows Mr. Addison possessing the firearm he is charged with possessing in Counts Two, Three, and Four—which is highly probative of those counts. *United States v. Buckner*, 868 F.3d 684, 688 (8th Cir. 2017) (prior possession of a firearm is evidence of possession under 18 U.S.C. § 922(g)).

However, to the extent any images show Mr. Addison with firearms that he is not charged with possessing, the government must redact those images.

Mr. Addison's objection to this evidence is **OVERRULED**, subject to the redactions noted by the Court.

## VI. The carwash video.

The government intends to introduce a video of Mr. Addison in a carwash (Exhibit G-299). ECF 112, pp. 42-43. The video includes footage of a firearm that the government contends is the same firearm that Mr. Addison possessed on April 14, 2023, and the government argues the video is admissible as intrinsic evidence of Counts Two, Three, and Four. *Id.* Mr. Addison argues that the video is inadmissible under Rules 401, 403, and 404(b) because there is a "cut" in the video that Mr. Addison asserts makes it unclear whether Mr. Addison and the firearm are in the same car. ECF 124, pp. 16-17.

The Court finds that the objection here is more of a question of the weight of the evidence. The video is relevant because it shows a firearm equipped with a Glock switch, which goes to Mr. Addison's knowing possession of a firearm, knowing possession of a machinegun, and knowing possession of a firearm in conjunction with

a drug-trafficking crime. The alleged "cut" in the video could be attributed to any number of things, but because the video was taken from Mr. Addison's phone, the jury should be permitted to view it and draw their own conclusions, and the defense can certainly cross-examine the witness on any alleged missing frames in the video.

Mr. Addison's objection is **OVERRULED**.

### VII. Evidence of drug ledgers and other drug trafficking notes.

The government intends to introduce evidence that Mr. Addison's cell phone contained drug ledgers or "owe sheets." ECF 112, pp. 45-48. The government argues that this evidence is admissible as intrinsic evidence of Counts One and Two or alternatively is admissible to show Mr. Addison's knowledge, intent, and absence of mistake or accident. *Id.* Mr. Addison argues that even if evidence regarding drug ledgers is admissible as intrinsic or extrinsic evidence as to Counts One and Two, it is not admissible as intrinsic nor extrinsic as to Count Four and should thus be excluded under Rules 401, 402, 403, and 404(b). ECF 124, pp. 17-19.

This evidence is directly related to Count One because the notes include direct references to fentanyl distribution, including language that the government's expert will explain relates to fentanyl distribution. Because it is intrinsic as to Count One, it is also intrinsic as to Count Two because Count Two requires the government to prove that the defendant possessed a firearm in furtherance of a drug trafficking crime. The probative value is high because the drug ledgers are direct evidence of intent to distribute, and this probative value is not substantially outweighed by the danger of unfair prejudice under Rule 403.

Even if this evidence were not intrinsic, it would still be admissible under Rule 404(b) because it goes to Mr. Addison's knowledge, intent, and lack of mistake. "Knowledge, intent, and lack of mistake or accident are well-established non-propensity purposes for admitting evidence of prior crimes or acts." *United States v. Givan*, 320 F.3d 452, 461 (3d Cir. 2003). Under a Rule 404(b) analysis, the first part

of the test is satisfied because the government plans to introduce the evidence for the non-propensity purpose of showing knowledge and intent. *United States v. Jackson*, 619 F. App'x 189, 193 (3d Cir. 2015). The second part of the test is satisfied because the evidence is relevant to establishing the elements of Mr. Addison's drug charge. *Id.* (upholding introduction of evidence of "past distribution as relevant to prove knowledge of the same or different drug in a later distribution trial."). As to unfair prejudice under Rule 403, the Court finds no serious undue prejudice here, based on the language of the notes; further, the probative value is not substantially outweighed by the unfair prejudice because if the "evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002); *see also United States v. Landfried*, No. 19-8, 2021 WL 5417515, at *2 (W.D. Pa. Nov. 19, 2021) (Ranjan, J.) (finding that prejudice did not substantially outweigh probative value of prior conviction because defendant's "knowledge and intent" were "crucial elements to the charges against him").

To the extent this evidence is not admissible as to Count Four, Mr. Addison may request a Rule 105 limiting instruction.

Mr. Addison's objection is **OVERRULED**.

**VIII. Notes discussing drug trafficking and firearms possession.**

The government argues that this evidence is intrinsic to Counts One, Two, and Three or alternatively is admissible to show Mr. Addison's knowledge, intent, and absence of mistake or accident. ECF 112, pp. 48. Mr. Addison argues that this evidence should be excluded under Rules 401, 402, 403, and 404(b). ECF 124, p. 19.

Under a Rule 404(b) analysis, the first part of the test is satisfied because the government plans to introduce the evidence for the non-propensity purpose of showing knowledge and intent. *Jackson*, 619 F. App'x at 193. The second part of the test is satisfied because the evidence is relevant to establishing Mr. Addison's knowledge of drug trafficking and intent to engage in drug trafficking, and Mr.

Addison's knowledge of the Glock switch and that it enables a firearm to fire fully automatically. As to unfair prejudice under Rule 403, for the same reasons that apply to the drug notes and owe sheets, the Court finds that the probative value is not substantially outweighed by the unfair prejudice because the evidence is highly probative and any risk of unfair prejudice is minimal.

Mr. Addison's objection is **OVERRULED**.

### IX. Drug trafficking communications and related evidence.

The government seeks to introduce messages from Mr. Addison's phone (Exhibits G-288 and G-229) as evidence that he distributed fentanyl. ECF 112, p. 62. These exhibits contain conversations between Mr. Addison and others about "Audi," "Lincoln," and "Chrysler" which the government submits are types of stamp bags that were found in Western Pennsylvania in the first half of 2023. *Id.* The government claims that these messages are intrinsic evidence as to Counts One and Two, and in the alternative are extrinsic evidence because the messages show knowledge, intent, and absence of mistake or accident. *Id.* Mr. Addison argues that this evidence should be excluded under Rules 401, 402, 403, and 404(b) because it is not intrinsic or extrinsic as to Count Four. ECF 124, pp. 19-20.

The Court finds that the messages are admissible under Rule 404(b) for the following reasons. First, the evidence is offered for a non-propensity purpose (knowledge of possession and intent to deliver controlled substances). Second, the evidence is relevant to the non-propensity purpose because "evidence of past distribution is relevant to prove intent to distribute in a later distribution trial, even to the extent of admitting prior convictions as well as uncharged conduct." *Jackson*, 619 F. App'x at 193 . Third, the evidence is highly relevant because it goes to Mr. Addison's knowing possession and his intent to distribute, and the danger of unfair prejudice does not substantially outweigh the probative value because evidence of prior drug distribution goes directly to Mr. Addison's knowledge and intent which is

a crucial aspect of the case. Fourth, the Court will provide the appropriate limiting instruction regarding this evidence.[3]

The government also seeks to admit evidence that stamp bags with the "Audi," "Lincoln," "Dodge," and "Chrysler" monikers were found in Western Pennsylvania through lab reports and overdose reports (Exhibits G-326-335). ECF 112, p. 62. Mr. Addison argues that this evidence is "a bridge too far" and should be excluded. ECF 124, p. 20.

On its exhibit list, the government indicates that it does not intend to move to admit these exhibits—instead, they form the basis for SSA Springmeyer's expert testimony. ECF 112-1. Any lab reports analyzing drugs that Mr. Addison is not charged with possessing, along with any overdose reports, are not admissible. The potential for unfair prejudice far outweighs any probative value as to those types of evidence because the risk that overdose reports will paint Mr. Addison in a negative light to the jury is extremely high. SSA Springmeyer may testify about drugs in Western Pennsylvania, but she may not testify as to overdoses.

Mr. Addison's objection is **SUSTAINED** in part and **OVERRULED** in part.

## X.     Other post-offense evidence of Count Four from Mr. Addison's phone.

Mr. Addison states that he "does not presently object to the government's evidence regarding his internet searches relative to the April 14 incident, and an April 26 text message he sent to his mother." ECF 124, p. 20.

## XI.    School bus evidence.

The government argues that the bus driver's testimony and the video from the bus is admissible as intrinsic evidence as to Count Four because it directly proves the charged offense. ECF 112, p. 66. Mr. Addison argues that this evidence is unfairly

---

[3] Mr. Addison has also objected to the content of these messages as hearsay, among other objections in his objections to the government's exhibit list. The Court will address those objections in its rulings on Mr. Addison's objections to the government's exhibit list.

prejudicial. ECF 124, pp. 21-22. The Court agrees with Mr. Addison.

The government has multiple surveillance videos and images that show Mr. Addison's car that can be edited to remove footage of the school bus. Further, after reviewing the footage from the school bus's surveillance camera, it is difficult to even see what is happening outside the bus, because the video is focused on the interior of the bus. The bus driver did not actually see Mr. Addison shoot the bus. As a whole, the probative value of this evidence is low, and the potential for unfair prejudice is substantial because the involvement of a school bus has the potential to inflame the jury against Mr. Addison. The Court will exclude the bus driver's testimony and video of the school bus under Rule 403.

Mr. Addison's objection is **SUSTAINED**.

### XII. The Defendant's Prior Drug Trafficking Conviction.

The parties have stipulated to Mr. Addison's prior drug trafficking conviction. ECF 142, ¶ 27.

********************

DATE: February 3, 2025                                BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge